# WOLCOTT WOOLLEN MANUFACTURING COMPANY
## et al. versus JACOB UPHAM.

Under the statutes respecting mills, a mill-owner is authorized to create a reservoir of water for the use of his mill, by erecting a dam remote from that at which the mill is situated, and the owner of land lying between the two dams, which is overflowed by the water from the reservoir, must apply for damages in the mode provided by the statutes.

THIS was an action of trespass brought by the Wolcott Woolen Manufacturing Company, and certain individuals doing business under the firm of the Columbian Manufacturing Company, against the defendant, for breaking and entering, on the 10th of August, 1825, into their close in Sturbridge, situated on both sides of the outlet of Watkins pond, and shutting down the plaintiffs' gate in their dam, thereby preventing the water of the pond from running to the plaintiffs' grist-mill and woollen and cotton mills, situated on Quinabaug river in Southbridge ; by reason of which the plaintiffs had suffered damage for want of sufficient water to drive their mills.

The defendant pleads, that long before and on the 10th of August, 1825, he was possessed of an ancient mowing lot situated on both sides of a brook, flowing from Watkins pond to Quinabaug river, on which lot he, and those heretofore possessed of the same, have been accustomed to cut and make into hay large quantities of grass, which from year to year grew thereon, free from any flowing of the same, and that the grass being then ripe, &c., he cut a part of it, &c., and which was then lying on the lot, and not sufficiently made into hay to be carried off, and was cutting the remainder, &c., and the plaintiffs having recently erected a dam across the brook above the lot possessed by the defendant, and thereby raised a large pond of water, and having on the 10th of August raised the gate of their dam and thereby let down so much water as to overflow the mowing lot, so that the defendant could not make the grass into hay, &c., for the purpose of stopping the flow of the waters on and over the mowing lot, and of enabling himself to make the grass into

Wolcott
W. M. Co.
v.
Uph&m.

hay, &c., he, on the 10th of August, entered upon the premises of the plaintiffs and shut down the gate, &c.

The plaintiffs, admitting the facts stated in the plea, reply, that on the 10th of August, and long before, they were the owners and occupants, in severalty, of two mills situated on Quinabaug river, about three miles below the ancient mowing lot of the defendant ; that for the purpose of raising a suitable head of water for driving their mills, they, on the 31st day of December, 1822, purchased jointly, in fee simple, and have ever since been jointly seised and possessed of a tract of land in Sturbridge, about a quarter of a mile above the mowing lot ; that on the same 31st of December, they erected upon this tract of land the dam and gate mentioned in their writ, by means of which a suitable head of water was raised for driving their mills ; that for the purpose of using the water, they from time to time, and as often as occasion required, opened the gate, so that the water flowed down in sufficient quantities to drive their mills ; that on the 10th of August, having occasion for the water reserved and collected by the dam and gate, for the purpose mentioned, and the same being a suitable and proper occasion for the use of the water for such purpose, they opened the gate, whereby the water flowed in the brook and over the ancient mowing field to the plaintiffs' mills in such and no greater quantity than they had occasion to use in driving their mills to the best advantage ; and that on the 10th of August, while the water was so flowing for the purpose mentioned, the defendant entered, &c., and shut the gate, whereby the plaintiffs were prevented from using their head of water to the best advantage.

To this replication there was a general demurrer.

Oct. 3d.

Newton, in support of the demurrer, cited Johnson v. Kittredge, 17 Mass. R. 76 ; St. 1795, c. 74 ; St. 1824, c. 153 ; and he contended that these statutes apply only where the flowing is occasioned by the dam at which the mill is situated, and not where it is occasioned by a dam to a reservoir.

Merrick, contrà, relied on St. 1824, c. 153, and Stowel. v. Flagg, 11 Mass. R. 364.

Oct. 6th.

Per Curiam. The facts stated in the plea are a sufficient bar to the action at common law, and the question is whether

the replication brings the plaintiffs' case within the statute of 1795, c. 74, or any of its supplements, for the support and regulation of mills.   The encouragement of mills has always been a favorite object with the legislature, and though the reasons for it may have ceased, the favor of the legislature continues.[1]   By *St.* 1824, c. 153, the provisions of the mill acts are extended expressly to damages caused by flowing lands below any mill dam.   The phraseology of this statute, which may be considered as a legislative exposition of the former ones, is very general.   " Whenever any person shall complain, &c., that he sustains damages in his lands by their being flowed, whether said lands shall be situated above or below any mill dam," &c.   We think that if the facts stated in the replication do not bring the case within the former statutes, it certainly is embraced by these words.[2]

But it is objected that the operation of the statutes, under this construction, will be inconvenient ; that it will be impossible for the jury to assess suitable damages.   It is true, it would be difficult in regard to future damages, but the same difficulty occurs in other cases under these statutes ; especially where the flowing is below the mill dam.   The amount of damages will depend on the use to be made of the water, and on the times when it is to be drawn off ; but it may be estimated from the damages which shall have been actually sustained.   It is said also, that the jury cannot determine how far it will be necessary to flow the lands, and during what portions of the year.   There may be a difficulty as to the time, but there is none in regard to the height of flowing. The jury might however find, that the mill owner shall not flow the lands in the season proper for making hay.[1]   But the inconveniences insisted on cannot be very great, as the assessment of damages &c. will be subject to alteration upon the application of the party thinking himself aggrieved.[2]   We do not perceive that they are greater than in many other cases of

<div style="margin-left:auto;text-align:right;">Wolcott<br>W. M. Co<br>v.<br>Upham.</div>

295

---

[1] See *Stowell* v. *Flagg*, 11 Mass. R. (Rand's ed.) 365, n. (*a*.)

[2] See Revised Stat. c. 116, § 4 ; *Fiske* v. *Framingham Manufac. Co.* 12 Pick. 69, 70.

[1] See Revised Stat. *c.* 116, § 18.

[2] See Revised Stat. c. 116, § 33.

Wolcott
W. M. Co.
v.
Upham.

this nature, and, as before observed, the present case comes clearly within the meaning of the statute of 1824. It is very common that two or more ponds are required for a mill, though they are not often so remote from each other as in this instance.

*Replication adjudged sufficient.*